BRYANT, Judge.
 

 *56
 
 Where the trial court was within its discretion to set aside the jury verdict on the ground it was grossly inadequate, we affirm in part the trial court order granting plaintiff relief; however, where the trial court acted outside its authority in altering the verdict and thereafter amending the judgment, we vacate the amended judgment and remand for a new trial on damages. Where defendant was not entitled to an instruction on contributory negligence, we affirm the trial court's directed verdict as to that defense. Where the trial court acted within its statutory and discretionary authority in awarding costs to plaintiff, we affirm.
 

 On 21 October 2014, the Honorable Zoro Guice, Jr., Judge presiding in Henderson County Superior Court, entered judgment in accordance with jury verdicts finding defendant Michael J. Rosner, M.D. and Michael J. Rosner, M.D., P.A., negligent and liable to plaintiff Bruce Justus as Administrator of the
 
 *145
 
 Estate of Pamela Jane Justus.
 
 [1]
 

 ,
 

 [2]
 
 The jury found that
 
 *57
 
 plaintiff was entitled to recover $512,162.00 for personal injury, but that that amount should be reduced by $512,161.00 (resulting in a nominal $1.00 award) "because of Pamela Justus's unreasonable failure ... to avoid or minimize her damages." Within ten days, plaintiff filed a motion to alter or amend the judgment pursuant to N.C. R. Civ. P. 59(a)(5), (7) and Rule 59(e). On 3 March 2015, Judge Guice entered an order granting plaintiff's motion to amend the 21 October 2014 judgment and also a corresponding amended judgment which struck the jury's verdict on mitigation of damages and awarded plaintiff $512,162.00. Dr. Michael J. Rosner and Michael J. Rosner, M.D., P.A., appeal this order, the amended judgment, and an order awarding costs.
 
 [3]
 

 _________________________
 

 As the 3 March 2015 order and amended judgment from which defendant appeals contain relevant facts (and procedural history), we set them out herein in relevant part:
 

 FINDINGS OF FACT
 

 1. On June 12, 2003, Plaintiffs [sic] filed [this] action alleging medical malpractice by Defendant Michael J. Rosner, M.D.
 

 2. The charges of medical malpractice against Dr. Rosner ar[o]se from his performance of two neurosurgical procedures on decedent Pamela Jane Justus.
 

 ....
 

 4. The following evidence was presented at trial and was uncontroverted:
 

 a. On June 27, 2000, Dr. Rosner performed a laminectomy on Pamela Justus.
 
 [
 

 4
 

 ]
 

 b. On February 6, 2001, after Mrs. Justus reported increased pain, Dr. Rosner performed a second surgery
 
 *58
 
 (a laminectomy, craniectomy /craniotomy, tonsillar resection, and placement of a bovine pericardium).
 

 c. Mrs. Justus last saw Dr. Rosner on March 21, 2001.
 

 d. On May 29, 2001, in response to her report of severe pain, nausea and other post-operative symptoms, Dr. Rosner's office advised Mrs. Justus to return to see Dr. Rosner for a repeat MRI and re-evaluation, but she declined, stating that she was afraid to come back to Dr. Rosner again, and also that she lacked insurance because her husband had been laid off from work.
 

 e. Thereafter, Mrs. Justus repeatedly consulted with physicians in an effort to obtain treatment for her continuing neck, head and back pain. For example, she saw Dr. Charles Buzzanell in July and August 2001; a neurologist at Wake Forest University Baptist Medical Center in August and September 2001; Dr. Lesco Rogers on September 25, 2001; Dr. Shashidhar Kori at Duke University Medical Center on September 25, 2001, and neurosurgeon Dr. Regis Haid from November 2003 through January 2004.
 

 f. In February 2004, Mrs. Justus visited Carolina Neurosurgery and Spine Associates in Charlotte, North Carolina, for corrective surgery; and, in April 2004, she had surgery done to correct her inability to support her head.
 

 g. On numerous occasions from 2004 through 2011, Mrs. Justus sought and received further medical care related to her head and neck.
 

 h. In late 2011, Mrs. Justus had another corrective back and neck surgery performed
 
 *146
 
 by Dr. Coric of Carolina Neurosurgery and Spine Associates.
 

 i. Mrs. Justus died on September 20, 2012.
 

 5. Dr. Rosner contended at trial that Mrs. Justus unreasonably failed to mitigate her damages.
 

 6. To support the foregoing defense, Dr. Rosner called four neurosurgical experts (Drs. Michael Seiff, Donald Richardson, Peter Jannetta, and Konstantin Slavin) to testify on his behalf.
 

 *59
 
 7. These neurosurgical experts testified that Mrs. Justus' condition could have been ameliorated had she promptly sought follow-up care from Dr. Rosner.
 

 8. Based upon the Court's opportunity to observe the evidence as it was presented and the attendant circumstances, together with the demeanor of Dr. Rosner's neurosurgical experts and considering all of their testimony in context, this Court finds that the overall impression created by these witnesses (and thus communicated to the jury) is that Mrs. Justus had an obligation to return specifically to
 
 Dr. Rosner
 
 ; and that, by failing to do so, she allowed her condition to worsen.
 

 9. That Dr. Rosner elicited this testimony from four different experts, moreover, intensified its cumulative impact upon the jury.
 

 10. There was no evidence presented that [Mrs.] Justus unreasonably delayed trying to have her problems diagnosed and corrected.
 

 11. On the contrary, her attempts to mitigate her damages were reasonable and all that could be expected.
 

 12. Given the uncontested evidence that [Mrs.] Justus promptly and persistently made diligent efforts to obtain treatment from other physicians after she terminated her relationship with Dr. Rosner, no reasonable person could conclude that she failed to exercise reasonable care to mitigate her damages.
 

 13. Nevertheless, Dr. Rosner's mitigation defense was submitted as Issue # 12 to the jury.
 

 14. On September 24, 2014, the jury returned a verdict on [sic] favor of Plaintiffs against Dr. Rosner.
 

 15. The jury found that Mrs. Justus sustained damages in the amount of Five Hundred Twelve Thousand One Hundred Sixty-[Two] Dollars ($512,16[2].00).
 

 16. The foregoing sum reflected only Mrs. Justus' medical bills; it included no damages for pain and suffering.
 

 17. Based upon its finding in Issue # 12 that Mrs. Justus had unreasonably failed to mitigate her damages,
 
 *60
 
 the jury reduced the foregoing damage award to One Dollar ($1.00).
 

 18. Given the uncontroverted evidence that Mrs. Justus experienced severe pain and suffering (e.g., nausea, tremors, and imbalance) as a result of the procedures performed by Dr. Rosner, and that, even had she allowed Dr. Rosner to continue to treat her, she would have endured at least some of these symptoms, the jury's finding of
 
 no
 
 damages for pain and suffering is inadequate.
 

 19. In addition, given the absence of evidence that Mrs. Justus unreasonably failed to mitigate her damages, the damage award as reduced by the jury's finding on Issue # 12 is inadequate for that reason as well.
 

 20. Furthermore, the amount of the jury's mitigation finding-i.e., that Mrs. Justus' condition was almost
 
 entirely her own fault
 
 (except for $1.00)-vastly exceeds, and is grossly disproportionate to, the extent to which, according to Dr. Rosner's neurosurgical experts, her condition could have been ameliorated had she timely sought follow-up care.
 

 ....
 

 CONCLUSIONS OF LAW
 

 1. Patients have no legal obligation to seek medical treatment from any particular health care provider.
 

 2. Mrs. Justus therefore had no duty to return to Dr. Rosner, rather than to other health care providers.
 

 3. The testimony by Dr. Rosner's neurosurgical experts suggesting that Mrs. Justus
 
 *147
 
 had a duty to return specifically to Dr. Rosner was inaccurate and misleading.
 

 4. The misleading effect of the foregoing testimony was compounded by its repetition from four different expert witnesses.
 

 5. Dr. Rosner presented no legally competent evidence sufficient to support a finding that Mrs. Justus unreasonably failed to mitigate her damages.
 

 6. This Court committed prejudicial error in submitting Issue # 12 [ (mitigation of damages defense) ] to the jury.
 

 7. The jury's $1.00 damage award is manifestly inadequate.
 

 *61
 
 8. The jury appears to have made its initial damage finding ($512,16[2].00) under the influence of passion or prejudice, for the finding entirely omits any sum for pain and suffering despite the uncontroverted evidence that Mrs. Justus experienced severe pain and suffering.
 

 9. The jury also appears to have reduced its damage finding ($512,161.00) under the influence of passion or prejudice; specifically, the cumulative impact of misleading testimony from multiple experts.
 

 10. Even aside from the lack of evidence to support
 
 any
 
 mitigation finding at all, the influence of passion or prejudice is further manifested in the grossly excessive
 
 amount
 
 of the jury's mitigation finding.
 

 Based on the foregoing Findings of Fact and Conclusions of Law, it is therefore
 
 ORDERED, ADJUDGED AND DECREED
 
 as follows:
 

 1. Plaintiffs' Motion to Alter or Amend Judgment is hereby GRANTED.
 

 2. The judgment entered on October 21, 2014 is hereby AMENDED by changing the amount of damages from One Dollar ($1.00) to Five Hundred Twelve Thousand One Hundred Sixty-Two Dollars ($512,162.00).
 

 Following the detailed order granting plaintiff's motion to amend, the trial court entered an amended judgment. The amended judgment reads, in relevant part, as follows:
 

 Pursuant to the Court's "Order Granting Plaintiff's Motion To Alter or Amend Judgment", the Judgment entered on October 21, 2014 is hereby amended as follows: ... IT IS HEREBY
 
 ORDERED, ADJUDGED and DECREED,
 
 that the Plaintiff, Billy Bruce Justus, as Administrator of the Estate of Pamela Jane Justus, shall have and recover from the Defendants, Michael J. Rosner, MD and Michael J. Rosner, MD, PAs [sic] the sum of
 
 Five Hundred Twelve Thousand One Hundred Sixty-Two [$512,162.00] Dollars with interest at the legal rate of eight (.08) percent per annum from the date of the filing of the complaint, June 12, 2003 until paid.
 

 (Emphasis added).
 

 *62
 
 _________________________
 

 On appeal, defendant argues the trial court erred by (I) setting aside a valid jury verdict on the issue of Pamela Justus's failure to mitigate damages. Alternatively, he argues the court erred by (II) entering an amended judgment instead of granting a new trial on all issues, including (III) allowing a defense of contributory negligence. Defendant further argues (IV) the trial court's award of costs must be reversed.
 

 I
 

 Defendant first contends plaintiff's motion to amend the judgment was an invalid motion and, thus, the trial court erred in considering it. Defendant further contends the trial court compounded the error by setting aside the damages verdict and concluding as a matter of law that the trial court itself had committed prejudicial error by submitting Issue # 12-mitigation of damages-to the jury.
 

 "Motions to amend judgments pursuant to N.C.G.S. § 1A-1, Rule 59 are addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of that discretion."
 
 Trantham v. Michael L. Martin, Inc.
 
 ,
 
 228 N.C.App. 118
 
 , 127,
 
 745 S.E.2d 327
 
 , 335 (2013) (citation omitted).
 

 [W]e note that the trial judges of this state have traditionally exercised their discretionary power to grant a new trial in civil cases quite sparingly in proper deference to the finality and sanctity of the jury's findings. We believe that our appellate
 
 *148
 
 courts should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity for a new trial. Due to their active participation in the trial, their first-hand acquaintance with the evidence presented, their observances of the parties, the witnesses, the jurors and the attorneys involved, and their knowledge of various other attendant circumstances, presiding judges have the superior advantage in best determining what justice requires in a certain case. Because of this, we find much wisdom in the remark made many years ago by Justice Livingston of the United States Supreme Court that "there would be more danger of injury in revising matters of this kind than what might result now and then from an arbitrary or improper exercise of this discretion."
 
 Insurance Co. v. Hodgson
 
 , 10 U.S. (6 Cranch) 206, 218,
 
 3 L.Ed. 200
 
 (1810). Consequently, an appellate court should
 
 *63
 
 not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice.
 

 Worthington v. Bynum
 
 ,
 
 305 N.C. 478
 
 , 487,
 
 290 S.E.2d 599
 
 , 605 (1982). Our Supreme Court recognized a basis for such discretion in that
 

 [t]he judge is not a mere moderator, but is an integral part of the trial, and when he perceives that justice has not been done[,] it is his duty to set aside the verdict. His discretion to do so is not limited to cases in which there has been a miscarriage of justice by reason of the verdict having been against the weight of the evidence (in which, of course, he will be reluctant to set his opinion against that of the twelve), but he may perceive that there has been prejudice in the community which has affected the jurors, possibly unknown to themselves, but perceptible to the judge-who is usually a stranger-... but which has brought about a result which the judge sees is contrary to justice.
 

 Id.
 
 at 483,
 
 290 S.E.2d at
 
 603 (citing
 
 Bird v. Bradburn
 
 ,
 
 131 N.C. 488
 
 , 489,
 
 42 S.E. 936
 
 , 937 (1902) ).
 

 Pursuant to North Carolina General Statutes, section 1A-1, Rule 59,
 

 [a] new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:
 

 ....
 

 (5) Manifest disregard by the jury of the instructions of the court;
 

 (6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;
 

 (7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law;
 

 (8) Error in law occurring at the trial and objected to by the party making the motion, or
 

 (9) Any other reason heretofore recognized as grounds for new trial.
 

 *64
 
 N.C. Gen. Stat. § 1A-1, Rule 59(a) (2015). A Rule 59(e) "motion to alter or amend must be based on grounds listed in Rule 59(a)."
 
 Smith v Johnson
 
 ,
 
 125 N.C.App. 603
 
 , 606,
 
 481 S.E.2d 415
 
 , 417 (1997) (citation omitted).
 

 Mitigation of Damages
 

 Defendant challenges the trial court's authority to amend the 21 October 2014 judgment pursuant to Rule 59(a)(7) ("Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law"). Defendant contends the trial court erred in setting aside the verdict, where the mitigation of damages issue was supported by the evidence presented at trial and properly submitted to the jury. Further, defendant argues that where evidence on an issue is admitted before the jury, no challenge to the jury instruction on the issue is made, and the jury verdict is not contrary to law, a trial court is without authority to amend the judgment. We disagree, as Rule 59(a)(7) allows for amendment of the judgment or a new trial based on "[
 
 i
 
 ]nsufficiency
 
 of the evidence to justify the verdict
 

 or
 
 that the verdict is contrary to law."
 

 Id.
 

 (emphasis added).
 

 Rule 59(a)(7) authorizes the trial court to grant a new trial based on the "insufficiency of the evidence to justify the verdict." N.C.G.S. § 1A-1, Rule 59(a)(7). We have
 
 *149
 
 previously indicated that, in this context, the term "insufficiency of the evidence" means that the verdict "was against the greater weight of the evidence."
 
 Nationwide Mut. Ins. Co. v. Chantos
 
 ,
 
 298 N.C. 246
 
 , 252,
 
 258 S.E.2d 334
 
 , 338 (1979). The trial court has discretionary authority to appraise the evidence and to " 'order a new trial whenever in his opinion the verdict is contrary to the greater weight of the credible testimony.' "
 
 Britt v. Allen
 
 ,
 
 291 N.C. 630
 
 , 634,
 
 231 S.E.2d 607
 
 , 611 (1977) (quoting
 
 Roberts v. Hill
 
 ,
 
 240 N.C. 373
 
 , 380,
 
 82 S.E.2d 373
 
 , 380 (1954) ). Like any other ruling left to the discretion of a trial court, the trial court's appraisal of the evidence and its ruling on whether a new trial is warranted due to the insufficiency of evidence is
 
 not
 
 to be reviewed on appeal as presenting a question of law.
 
 Id.
 
 at 635,
 
 231 S.E.2d at 611
 
 . As we stated in
 
 Worthington
 
 :
 

 It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either
 
 granting
 
 or
 
 denying
 
 a motion to set aside a verdict and order a new trial is
 
 strictly limited
 
 to the determination of
 
 *65
 
 whether the record affirmatively demonstrates an abuse of discretion by the [trial] judge.
 

 305 N.C. at 482
 
 ,
 
 290 S.E.2d at 602
 
 (emphasis added). [Our Supreme] Court has long recognized this standard for appellate review of trial court orders granting new trials.
 
 See, e.g.
 
 ,
 
 Dixon v. Young
 
 ,
 
 255 N.C. 578
 
 ,
 
 122 S.E.2d 202
 
 (1961) ;
 
 Caulder v. Gresham
 
 ,
 
 224 N.C. 402
 
 ,
 
 30 S.E.2d 312
 
 (1944) ;
 
 Bird v. Bradburn
 
 ,
 
 131 N.C. 488
 
 ,
 
 42 S.E. 936
 
 (1902) ;
 
 Brink v. Black
 
 ,
 
 74 N.C. 329
 
 (1876).... " '[A]n appellate court should not disturb a
 
 discretionary
 
 Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice.' "
 
 Anderson v. Hollifield
 
 ,
 
 345 N.C. 480
 
 , 483,
 
 480 S.E.2d 661
 
 , 663 (1997) (quoting
 
 Campbell v. Pitt County Mem'l Hosp., Inc.
 
 ,
 
 321 N.C. 260
 
 , 265,
 
 362 S.E.2d 273
 
 , 275 (1987) ) (emphasis added).
 

 The trial court's discretion to grant a new trial arises from the inherent power of the court to prevent injustice.
 
 Britt
 
 ,
 
 291 N.C. at 634
 
 ,
 
 231 S.E.2d at 611
 
 ....
 

 ....
 

 ... It is impossible to place precise boundaries on the trial court's exercise of its discretion to grant a new trial. However, we emphasize that this power must be used with
 
 great care and exceeding reluctance
 
 . This is so because the exercise of this discretion sets aside a jury verdict and, therefore, will always have some tendency to diminish the fundamental right to trial by jury in civil cases which is guaranteed by our Constitution.
 

 In re Buck
 
 ,
 
 350 N.C. 621
 
 , 624-26,
 
 516 S.E.2d 858
 
 , 860-61 (1999).
 

 Thus, the inherent power of the trial court to try and prevent injustice by setting aside a jury verdict is fully supported in our jurisprudence.
 
 [5]
 
 For the foregoing reasons, we review defendant's challenges to the trial court's actions for abuse of discretion.
 
 See
 

 id
 
 .
 

 *66
 
 First, in reviewing defendant's challenge to the portion of the trial court's order regarding mitigation of damages, we note defendant's challenge to Finding of Fact 9 (finding "Dr Rosner elicited [misleading] testimony from four different experts [which] intensified its cumulative impact upon the jury") as "not accurate" and to Finding of Fact 12 (finding that "Pamela Justus made prompt and diligent efforts to obtain treatment for her injuries" and "no reasonable person could conclude that Pamela Justus failed to exercise reasonable care to mitigate
 
 *150
 
 her damages") as "not supported by the evidence." We contrast the two challenged findings with the trial court's Finding of Fact 8, in which the court stated the testimony and demeanor of the expert witnesses created an impression communicated to the jury that by Pamela's failure to return specifically to Dr. Rosner, she allowed her condition to worsen. Indeed, Finding of Fact 8 and other unchallenged findings support the trial court's conclusions that because Pamela Justus had no duty to return specifically to Dr. Rosner for medical treatment, cumulative expert testimony that said otherwise was so misleading the jury should never have been instructed on a "mitigation of damages" defense. Thus, the jury verdict-that "Plaintiff's actual damages be reduced [by $512,161.00] because of Pamela Justus's unreasonable failure ... to avoid or minimize her damages"-was set aside by the trial court upon its determination that, given misleading evidence adduced at trial, it was error to submit the mitigation of damages instruction to the jury.
 

 On this point, defendant contends the legal question before this Court is "[whether] a failure to follow-up with treatment or otherwise comply with a physician['s] instructions constitute failure to mitigate damages." Here, defendant proposes an inquiry that implicates factual evidence adduced at trial, jury instructions as to mitigation of damages, and the trial court's reasoning for setting aside the verdict. Defendant's contention-that a failure to follow up with treatment or otherwise comply with a physician's instructions may constitute failure to mitigate-is much broader than the narrower issue the trial court reviewed, which was whether the jury considered only the expert testimony that failure to follow up with Dr. Rosner (as opposed to seeking treatment from other medical providers) constituted unreasonable failure to mitigate damages.
 

 *67
 
 On failure to mitigate damages, the trial court instructed the jury as follows:
 

 A person injured by the negligent conduct of another is nonetheless under a duty to ... seek treatment to get well and to avoid or minimize the harmful consequences of her injury.... If you find that a healthcare provider advised [Pamela] to follow up her care and treatment, you would not necessarily conclude that Pamela Justus acted unreasonably in declining such advice. In determining whether [her] conduct was reasonable you must consider all the circumstances as they appeared to [her] at the time she chose not to follow the ... advice. These may include the financial condition of [Pamela], the degree of risk involved, the amount of pain involved, the chances for success....
 

 Thus, it appears the trial court instructed the jury on the narrow question of whether failure to follow up with Dr. Rosner constituted an unreasonable failure to mitigate damages.
 

 At trial, there was significant testimony regarding extensive medical treatment, including additional procedures performed on Mrs. Justus over the ten years following the two surgeries performed by Dr. Rosner. As previously indicated, there was also significant testimony from experts, who indicated Ms. Justus's failure to follow-up with Dr. Rosner contributed to her severe kyphosis. For example, Dr. Seiff gave the following testimony:
 

 A.... When you develop a post-laminectomy kyphotic deformity, you do so gradually. You don't wake up one morning and all of a sudden your chin is on your chest. It's a gradual response to-it's a complication of a multilevel laminectomy, but that's one of the risks of the surgery. They don't happen often, but they happen.... [I]t doesn't happen overnight.
 

 So the fact that hers was chin on chest was because it went unaddressed for about three years before the time she presented to [Dr.] Coric. If she had been following up, as she should have, it would have been detected that she was developing a post-laminectomy kyphotic deformity and she would have had the appropriate surgery much sooner than when she presented with a chin-on-chest deformity.
 

 *68
 
 We acknowledge defendant's observation that evidence of record exists that Pamela's actions and health conditions-i.e., obesity, diabetes, smoking-may constitute evidence sufficient to support an instruction on failure to mitigate damages, but we take no position on whether those actions and health conditions
 
 *151
 
 in fact constitute sufficient evidence to support a reduction in damages. However, defendant will have an opportunity to present and argue these matters in a mitigation defense in a new damages trial. Defendant can also address the issue it presented as a legal one (although we reject it as such in this appeal): whether failure to follow up with treatment or otherwise comply with a physician's-or specifically Dr. Rosner's-instructions could constitute unreasonable failure to mitigate damages. We do hold that the trial court's actions, in determining evidence of mitigation of damages was insufficient to justify the verdict, did not amount to an abuse of discretion. As "the test is one of reasonableness, and depends upon the circumstances of the particular case,"
 
 Radford v. Norris
 
 ,
 
 63 N.C.App. 501
 
 , 503,
 
 305 S.E.2d 64
 
 , 65 (1983), the trial court, having observed the evidence presented, the parties, the witnesses, the jurors, and the attorneys, is in the better position to "determin[e] what justice requires...."
 
 Worthington
 
 ,
 
 305 N.C. at 487
 
 ,
 
 290 S.E.2d at 605
 
 .
 

 Pain and Suffering
 

 Plaintiff's motion to alter or amend the judgment and the trial court's order granting his motion were also directed against the jury's finding that Pamela Justus suffered damages totaling $512,162.00, and that total did not include compensation for pain and suffering.
 

 The question presented as to this issue is whether the court was within its discretion to determine that the initial damages award of $512,162.00 was given under the influence of passion or prejudice as it omits any sum for pain and suffering.
 

 The law is well settled in this jurisdiction that in cases of personal injuries resulting from [a] defendant's negligence, the plaintiff is entitled to recover the present worth of all damages naturally and proximately resulting from [the] defendant's tort. The plaintiff,
 
 inter alia
 
 , is to have a reasonable satisfaction for actual suffering, physical and mental, which are the immediate and necessary consequences of the injury.... Generally, mental pain and suffering in contemplation of a permanent mutilation or disfigurement of the person may be considered as an element of damages, and it would seem that the weight of authority is to that effect.
 

 *69
 

 Robertson v. Stanley
 
 ,
 
 285 N.C. 561
 
 , 565,
 
 206 S.E.2d 190
 
 , 193 (1974) (citation omitted). "[I]n order to find an abuse of discretion in this context, the evidence as to damages must be
 
 clear, convincing and uncontradicted
 
 ."
 
 Hughes v. Rivera-Ortiz
 
 ,
 
 187 N.C.App. 214
 
 , 219,
 
 653 S.E.2d 165
 
 , 169 (2007) (citation omitted).
 

 The jury was given the following instruction with regard to what plaintiff was entitled to recover for damages:
 

 The plaintiff may also be entitled to recover actual damages....
 

 Actual damages are the fair compensation to be awarded to a person for any past injury proximately caused by the negligence of another. In determining the amount, if any, you award the plaintiff, you will consider the evidence you have heard as to each of the following types of damages:
 

 Medical expenses,
 
 pain and suffering
 
 , scars or disfigurement, partial loss of use of part of the body, and permanent injury until the time of death.
 

 ....
 

 Damages for personal injury also include fair compensation for the actual past physical pain and mental suffering experienced by Pamela Justus as a proximate result of the negligence of the defendant.
 

 (Emphasis added).
 

 Based on its post-verdict findings, the trial court drew the following conclusions:
 

 9. The jury also appears to have reduced its damage finding ($512,161.00) under the influence of passion or prejudice; specifically, the cumulative impact of misleading testimony from multiple experts.
 

 10. ... [T]he influence of passion or prejudice is further manifested in the grossly excessive amount of the jury's mitigation finding.
 

 On this record, we hold that the trial court acted within its discretion to determine that the jury's initial damages award for $512,162.00 did not include compensation for
 
 *152
 
 pain and suffering, and that its reduction of the damages award from $512,162.00 to $1.00 for failure to mitigate damages was excessive.
 
 See
 

 *70
 

 Anderson v. Hollifield
 
 ,
 
 345 N.C. 480
 
 , 483,
 
 480 S.E.2d 661
 
 , 663 (1997) ("A '
 
 discretionary
 
 order pursuant to [N.C.]G.S. 1A-1, Rule 59 for or against a new trial upon
 
 any
 
 ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown.' " (alterations in original) (quoting
 
 Worthington
 
 ,
 
 305 N.C. at 484
 
 ,
 
 290 S.E.2d at
 
 603 )).
 

 For completeness of addressing each of defendant's arguments, we agree that Rule 59(a)(8), which requires a moving party to object at trial to the alleged error of law, cannot serve as a basis to grant relief to plaintiff. On the other hand, Rule 59(a)(6) provides that "inadequate damages appearing to have been given under the influence of passion or prejudice" is grounds for a new trial.
 
 See
 
 N.C.G.S. § 1A-1, Rule 59(a)(6). Even though the trial court did not make a specific Rule 59(a)(6) "finding," its conclusion that the jury's verdict #11 of damages in the amount of $512,162.00 (which included no sum given for pain and suffering) in conjunction with verdict #12 reducing that award by $512,161.00 for failure to mitigate damages, must have been decided under the influence of passion or prejudice, and it appears to be a Rule 59(a)(6) finding. Having decided that the trial court acted within its discretion to set aside the jury verdict based on Rule 59(a)(6) and (7), we need not further address other subsections of the rule.
 
 [6]
 

 II
 

 Defendant argues in the alternative that the trial court erred in entering a post-verdict amended judgment instead of granting a new trial. We agree. However, contrary to defendant's argument, we reverse and remand for a new trial on damages only.
 

 Rule 59(a) provides that where "[e]xcessive or inadequate damages appear[ ] to have been given under the influence of passion or prejudice; [or] ... [the evidence is i]nsufficien[t] ... to justify the verdict," "[a] new trial may be granted to all or any of the parties and on all or part of the issues." N.C.G.S. § 1A-1, Rule 59(a)(6) and (7) ;
 
 see also
 

 Cicogna v. Holder
 
 ,
 
 345 N.C. 488
 
 , 490,
 
 480 S.E.2d 636
 
 , 637 (1997) (stating that "it is within the discretion of this Court whether to grant a new trial on all issues[, and that] [i]f the issue which was erroneously submitted did not affect the entire verdict, there should not be a new trial on all issues"; ordering a new trial on the issue of damages only);
 
 Robertson
 
 ,
 
 285 N.C. at 568-69
 
 ,
 
 206 S.E.2d at 195
 
 ("As a condition to the granting of a partial
 
 *71
 
 new trial, it should appear that the issue to be tried is distinct and separable from the other issues, and that the new trial can be had without danger of complications with other matters." (citation omitted));
 
 Snead v. Holloman
 
 ,
 
 101 N.C.App. 462
 
 ,
 
 400 S.E.2d 91
 
 (1991) (granting a new trial on the issue of damages where the trial court erred in failing to submit to the jury the issue of mitigation of damages).
 

 In its order, the trial court granted plaintiff's motion for relief from the jury verdict, but did not address plaintiff's request for a new trial. Instead, the court ordered that its earlier judgment (21 October 2014) entered in accordance with the jury verdicts be amended. The trial court's amended judgment, however, changed the jury's damages verdict from $1.00 to $512,162.00, and thereby improperly ordered relief beyond the scope authorized by Rule 59(a). A trial judge has the authority and discretion to set aside a jury verdict and grant a new trial-in whole or in part-under Rule 59 ; however, that rule does not allow a trial judge presiding over a jury trial to substitute its opinion for the verdict and change the amount of damages to be recovered.
 

 We agree with defendant that "[e]ven if the trial court had grounds to set aside the jury verdict, the trial court nevertheless erred in entering the Amended Judgment striking the jury's answer to the singular issue of mitigation of damages" and imposing a new verdict.
 
 See
 

 Bethea v. Kenly
 
 ,
 
 261 N.C. 730
 
 , 732,
 
 136 S.E.2d 38
 
 , 40 (1964) (per curiam) ("It is a cardinal rule that the judgment
 
 *153
 
 must follow the verdict, and if the jury have given a specified sum as damages, the court cannot increase or diminish the amount, except to add interest, where it is allowed by law and has not been included in the findings of the jury." (citations omitted));
 
 see also
 

 Circuits Co. v. Commc'ns, Inc.
 
 ,
 
 26 N.C.App. 536
 
 , 540,
 
 216 S.E.2d 919
 
 , 922 (1975) ("[W]e do not agree that the court acted properly or with authority when it entered an order, '[i]n its discretion, as an alternative to ordering a new trial' [pursuant to Rule 59 ], eliminating the 'bill back' item of $8,168.51 and reducing the verdict to $12,626.30.... We find nothing in the new Rules of Civil Procedure which would grant to the court the authority to modify the verdict by changing the amount of the recovery." (citations omitted));
 
 accord
 

 WRI/Raleigh, L.P. v. Shaikh
 
 ,
 
 183 N.C.App. 249
 
 , 257,
 
 644 S.E.2d 245
 
 , 249 (2007) (interpreting the holding in this Court's
 
 Circuits Co.
 
 opinion as finding error where the trial court modified the amount of the judgment awarded to conform with the trial court's instructions after determining that the jury had disregarded the instructions). Accordingly, we reverse the portion of the trial court's 3 March 2015 order purporting to grant plaintiff relief by amending the damages award of the 21 October 2014 judgment, and vacate the corresponding amended judgment.
 
 *72
 
 Furthermore, as discussed in Issue I, the trial court's finding that the reduction of the damage award from $512,162.00 to $1.00 was grossly excessive, as well as the court's determination that the personal injury award compensating plaintiff only for Pamela's medical expenses but not for pain and suffering was indicative of an award influenced by passion or prejudice, was properly within its discretion and afforded the trial court authority to grant plaintiff relief from the judgment pursuant to Rule 59(a).
 
 See
 
 N.C.G.S. § 1A-1, Rule 59(a) (authorizing the grant of a new trial "on all or part of the issues" should the damage award appear to be inadequate);
 
 see also
 

 Cicogna
 
 , 345 N.C. at 490, 480 S.E.2d at 637 (ordering a new trial on the issue of damages after reasoning that "[i]f the issue which was erroneously submitted did not affect the entire verdict, there should not be a new trial on all issues");
 
 Snead
 
 ,
 
 101 N.C.App. 462
 
 ,
 
 400 S.E.2d 91
 
 (granting a new trial on the issue of damages). Rule 59(a) authorizes a new trial limited to issues that do not affect the entire verdict, such as, in this case, damages. Accordingly, we remand this matter to the trial court for a new trial on the issue of damages only. Defendant is not restricted from presenting any evidence which bears on plaintiff's alleged damages and Pamela Justus's failure to mitigate her damages.
 

 III
 

 Alternatively, defendant again argues that should this Court vacate the trial court's amended judgment, but not reinstate the 21 October 2014 judgment, the appropriate remedy is a new trial on all issues, so as to allow defendant to pursue a defense of contributory negligence. Thus, defendant now challenges the trial court's grant of plaintiff's motion for a directed verdict on defendant's contributory negligence defense. We overrule defendant's argument.
 

 "A motion ... for a directed verdict under G.S. 1A-1, Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury and support a verdict...."
 
 Manganello v. Permastone, Inc.
 
 ,
 
 291 N.C. 666
 
 , 670,
 
 231 S.E.2d 678
 
 , 680 (1977) (citations omitted).
 

 In passing upon the motion, the court must consider the evidence in the light most favorable to the non-moving party, taking all evidence which tends to support his position as true, resolving all contradictions, conflicts and inconsistencies in his favor and giving him the benefit of all reasonable inferences. The motion may be granted only if the evidence is insufficient, as a matter of law, to support a verdict for the non-moving party. The same test is apposite
 
 *73
 
 whether considering a Rule 50(a) motion directed at the plaintiff's claim or at the defendant's counterclaim.
 

 Eatman v. Bunn
 
 ,
 
 72 N.C.App. 504
 
 , 506,
 
 325 S.E.2d 50
 
 , 51-52 (1985) (citations omitted). "Indeed, a directed verdict on the ground of contributory negligence is only proper when ... no other reasonable inference can be drawn from the evidence."
 

 *154
 

 Stanfield v. Tilghman
 
 ,
 
 342 N.C. 389
 
 , 394,
 
 464 S.E.2d 294
 
 , 297 (1995) (citation omitted). "We review the grant of a motion for directed verdict
 
 de novo
 
 ."
 
 Smith v. Herbin
 
 , --- N.C.App. ----, ----,
 
 785 S.E.2d 743
 
 , 745 (2016) (citation omitted). "In reviewing the trial court's ruling on appeal, the scope of review is limited to those grounds argued by the moving party before the trial court."
 
 Wilburn v. Honeycutt
 
 ,
 
 135 N.C.App. 373
 
 , 374,
 
 519 S.E.2d 774
 
 , 775 (1999) (citation omitted);
 
 accord
 

 Jernigan v. Herring
 
 ,
 
 179 N.C.App. 390
 
 , 393,
 
 633 S.E.2d 874
 
 , 877 (2006).
 

 Contributory negligence, as its name implies, is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the complaint to produce the injury of which the plaintiff complains.... Contributory negligence by the plaintiff can exist only as a co-ordinate or counterpart of negligence by the defendant as alleged in the complaint.
 

 Jackson v. McBride
 
 ,
 
 270 N.C. 367
 
 , 372,
 
 154 S.E.2d 468
 
 , 471 (1967) (citations omitted). "Contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant."
 
 Miller
 
 , 273 N.C. at 239, 160 S.E.2d at 74 (citation omitted). "[I]n order for a contributory negligence issue to be presented to the jury, the defendant must show that plaintiff's injuries were proximately caused by his own negligence."
 
 Cobo v. Raba
 
 ,
 
 347 N.C. 541
 
 , 545,
 
 495 S.E.2d 362
 
 , 365 (1998) (a medical malpractice case) (citation omitted).
 

 At trial, defendant's arguments advocating for an instruction on contributory negligence centered around evidence that Pamela Justus smoked following her first surgery with Dr. Rosner.
 

 We know that nicotine prevents fusions from healing. We know she was told about this. She smoked through her first fusion, and it failed her. Basically, an S-deformity of her neck increased.
 

 ....
 

 This is not on Dr. Rosner. This one is on the patient.
 

 *74
 
 After hearing the argument referencing testimony of the effects of smoking on a potential full recovery, the trial court granted plaintiff's motion for a directed verdict and dismissed defendant's defense of contributory negligence.
 

 In his brief to this Court contending the directed verdict should be reversed, defendant notes opinions wherein an injured plaintiff failed to follow doctor instructions, and as an almost direct result, the disease the plaintiff was fighting failed to be diagnosed or appropriately treated.
 
 See
 

 McGill v. French
 
 ,
 
 333 N.C. 209
 
 ,
 
 424 S.E.2d 108
 
 (1993) (holding the issue of contributory negligence was for the jury where the plaintiff contributed to his worsening systems by failing to follow his physician's instructions, denying the physician the opportunity to treat the plaintiff);
 
 Katy v. Capriola
 
 ,
 
 226 N.C.App. 470
 
 ,
 
 742 S.E.2d 247
 
 (2013) (holding the issue of contributory negligence was for the jury where the plaintiff failed to seek medical attention as her condition deteriorated). However, these cases are distinguishable from the instant case.
 

 In both
 
 McGill
 
 and
 
 Katy
 
 , the patients failed to follow directions given by a treating physician and as a result, the conditions for which the patients reported to their respective physicians went untreated.
 
 See
 

 McGill
 
 ,
 
 333 N.C. 209
 
 ,
 
 424 S.E.2d 108
 
 ;
 
 Katy
 
 ,
 
 226 N.C.App. 470
 
 ,
 
 742 S.E.2d 247
 
 . Here, Pamela Justus reported to Dr. Rosner for severe, debilitating headaches. Dr. Rosner then performed two surgeries for which he lacked a medical indication, compromising the ligaments and muscle that stabilized Pamela's head and creating the physical condition that led to Pamela's post-laminectomy kyphosis or S-deformity. Even if we set aside evidence that Dr. Rosner's surgeries were without medical indication, the conduct defendant points to as evidence of Pamela's contributory negligence occurred not before or contemporaneous with but following Dr. Rosner's negligent acts that caused injury.
 

 Viewing the evidence in the light most favorable to defendant, there is no evidence Pamela Justus contributed to the negligent conduct that damaged her neck.
 
 See
 

 Miller
 
 , 273 N.C. at 239, 160 S.E.2d at 74 ;
 
 Jackson
 
 ,
 
 270 N.C. at 372
 
 ,
 
 154 S.E.2d at
 
 471 ;
 
 see also
 

 Andrews v. Carr
 
 ,
 
 135 N.C.App. 463
 
 ,
 
 521 S.E.2d 269
 
 (1999) (holding that even if the
 
 *155
 
 plaintiff's post-surgery conduct contributed to his injuries, his conduct could not constitute contributory negligence as it occurred subsequent to the negligent medical care);
 
 Powell v. Shull
 
 ,
 
 58 N.C.App. 68
 
 ,
 
 293 S.E.2d 259
 
 (1982) (holding the plaintiff's failure to keep follow-up appointments with the defendant physician did not amount to contributory negligence as the plaintiff's actions could not have decreased or lessened the injury caused by the physician's negligence). Therefore, we affirm the trial
 
 *75
 
 court's directed verdict on contributory negligence, and accordingly, defendant's argument is overruled.
 

 IV
 

 Lastly, defendant challenges the trial court's lump sum award of costs in the amount $175,547.59 against defendant. Defendant contends the trial court failed to provide sufficient detail as to what the award was to reimburse, and if the amounts awarded were reasonable. We agree in part.
 

 Pursuant to General Statutes, section 6-20,
 

 [i]n actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court. Costs awarded by the court are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d), unless specifically provided for otherwise in the General Statutes."
 

 N.C. Gen. Stat. § 6-20
 
 (2015). Pursuant to 7A-305,
 

 [t]he following expenses, when incurred, are assessable or recoverable, as the case may be. The expenses set forth in this subsection are complete and exclusive and constitute a limit on the trial court's discretion to tax costs pursuant to G.S. 6-20 :
 

 (1) Witness fees, as provided by law.
 

 ....
 

 (10) Reasonable and necessary expenses for stenographic and videographic assistance directly related to the taking of depositions and for the cost of deposition transcripts.
 

 (11) Reasonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings.
 

 N.C. Gen. Stat. § 7A-305(d)(11) (2015).
 
 [7]
 

 *76
 
 "When read together, it is clear that costs require statutory authorization and that section 7A-305 or any other statute may authorize costs."
 
 Peters v. Pennington
 
 ,
 
 210 N.C.App. 1
 
 , 25,
 
 707 S.E.2d 724
 
 , 741 (2011).
 

 [T]he standard of review applicable to the taxing of costs ... [is a] combination of the two standards: Whether a trial court has properly interpreted the statutory framework applicable to costs is a question of law reviewed de novo on appeal. The reasonableness and necessity of costs is reviewed for abuse of discretion.
 

 Khomyak v. Meek
 
 ,
 
 214 N.C.App. 54
 
 , 57,
 
 715 S.E.2d 218
 
 , 220 (2011) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."
 
 Manning v. Anagnost
 
 ,
 
 225 N.C.App. 576
 
 , 581,
 
 739 S.E.2d 859
 
 , 862 (2013) (citation omitted).
 

 "If a category of costs is set forth in section 7A-305(d), 'the trial court is required to assess the item as costs.' Subsection (d)(11) therefore requires a trial court to assess as costs expert fees for time spent testifying at trial."
 
 Peters
 
 ,
 
 210 N.C.App. at 25-26
 
 ,
 
 707 S.E.2d at 741
 
 (quoting
 
 Springs v. City of Charlotte
 
 ,
 
 209 N.C.App. 271
 
 , 283-84,
 
 704 S.E.2d 319
 
 , 328 (2011) ).
 

 Attached to plaintiff's motion for costs, plaintiffs provided that the total for court reporting and videography bills for disposition was $89,789.84, and for trial experts $85,757.75. The sum of those two amounts equals $175,547.59, the amount the court awarded. The trial court did not award attorney's fees ($2,530,474.27), paralegal fees ($668,175.00), or "Additional Expert Witness Fees" ($458,089.30). Defendant points out that three experts-Arthur Caplan, Ph.D;
 

 *156
 
 Brian Currie, M.D.; and David Barton Smith-did not testify against Dr. Rosner, the party against whom plaintiff prevailed; rather, those experts testified against trial defendants found to be not liable or negligent. However, defendant fails to establish that ordering payment of these expert fees was an abuse of discretion.
 
 See generally
 

 Parton v. Boyd
 
 ,
 
 104 N.C. 422
 
 , 424 (
 
 104 N.C. 310
 
 , 311)
 
 10 S.E. 490
 
 , 491 (1889) ("The court gave judgment against the plaintiff for costs, and the presumption is, nothing to the contrary appearing, that it did so in the exercise of its discretionary authority.... To [reverse for abuse] ... would be to substitute the discretion of this Court for that of the court below."). Therefore, we hold the award is properly within the trial court's discretion. Accordingly, defendant's argument is overruled.
 

 AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; AND REMANDED.
 

 Judge INMAN concurs.
 

 Judge TYSON concurs in part and dissents in part by separate opinion.
 

 TYSON, Judge, concurring in part, and dissenting in part.
 

 *77
 
 I concur with that portion of the majority's opinion, which holds the trial court is without authority under Rule of Civil Procedure 59 to substitute its opinion for the jury's verdict on plaintiff's damages and to alter the amount of damages to be recovered, and reverses the trial court's order. I also concur with that portion of the majority's opinion, which holds the trial court did not err by granting plaintiff's motion for directed verdict on defendant's contributory negligence defense.
 

 I also find reversible error in the trial court's ruling under Rule 59 and write separately. I disagree with the majority's holding that the trial court did not commit reversible error under Rule 59 when it erroneously set aside the jury's verdict on the issue of Pamela's failure to mitigate her damages.
 

 I also disagree with and dissent from that portion of the majority's opinion which upholds the order requiring defendant to pay as recoverable costs, fees for plaintiff's three non-testifying experts. Their testimonies were directed against the hospital defendants, which were acquitted by the jury, and did not pertain to Dr. Rosner's standard of care or alleged acts of negligence. The trial court possessed no statutory authority to order these fees to be assessed against Dr. Rosner as costs. I respectfully dissent.
 

 I. Ruling on Plaintiff's Rule 59 Motion
 

 The trial court's order does not specifically state which subsections of Rule 59 it relied upon to set aside the jury's one dollar final award. However, it is apparent from the language of the order that the trial court purportedly granted relief from the jury's verdict pursuant to subsections (a)(6) and (7) of Rule 59, which provide:
 

 (a) Grounds.- A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds:
 

 ....
 

 (6) Excessive or inadequate damages appearing to have been given under the influence of passion or prejudice;
 

 *78
 
 (7) Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law[.]
 

 N.C. Gen. Stat. § 1A-1, Rule 59 (a)(6) and (7) (2015).
 

 It also appears the trial court also relied, at least in part, upon subsection (a)(8) of the Rule, which provides a new trial may be granted due to an "[e]rror in law occurring at the trial
 
 and objected to
 
 by the party making the motion." N.C. Gen. Stat. § 1A-1, Rule 59(a)(8) (emphasis supplied). The trial court concluded that it had "committed prejudicial error in submitting Issue # 12 to the jury," because Dr. Rosner "presented no legally competent evidence sufficient to support a finding that Mrs. Justus unreasonably failed to mitigate her damages."
 

 A. Relief under Rule 59(a)(8) for Error of Law at Trial
 

 The trial court erred and its order must also be reversed to the extent the court relied upon subsection (a)(8) of Rule 59 to set aside the jury's verdict. Subsection (a)(8) requires plaintiff to have objected: (1) at trial
 
 *157
 
 to the evidence when admitted at trial; (2) to the trial court's jury instructions; and, (3) to submission of Issue # 12 to the jury. Plaintiff failed to object to any and all three actions.
 
 See
 

 id
 
 .
 

 The trial court set aside the jury's verdict, at least in part, based upon a purported error of law, which occurred at trial. Any purported "error of law" in giving the mitigation of damages instruction and submitting Issue # 12 to the jury cannot serve as any basis for Rule 59 relief, where plaintiff failed to object at any point at trial when the testimony was admitted and after the jury was instructed, considered the issue, and reached a verdict.
 
 See
 

 id
 
 .
 

 B. Pain and Suffering
 

 To support the granting of relief under subsection (a)(6) of Rule 59 ("[e]xcessive or inadequate damages appearing to have been given under the influence of passion or prejudice"), the trial court found and concluded:
 

 16. The foregoing sum [$512,162.00] reflected only Mrs. Justus' medical bills; it included no damages for pain and suffering.
 

 ....
 

 18. Given the uncontroverted evidence that Mrs. Justus experienced severe pain and suffering (e.g., nausea, tremors, and imbalance) as a result of the procedures performed
 
 *79
 
 by Dr. Rosner, and that, even had she allowed Dr. Rosner to continue to treat her, she would have endured at least some of these symptoms, the jury's finding of no damages for pain and suffering is inadequate.
 

 ....
 

 8. The jury appears to have made its initial damage finding ($512,16[2].00) under the influence of passion or prejudice, for the finding entirely omits any sum for pain and suffering despite the uncontroverted evidence that Mrs. Justus experienced severe pain and suffering.
 

 Fifteen different allegations of negligence related to Dr. Rosner's performance of the surgeries were submitted to the jury. The verdict sheet simply required the jury to answer "yes" or "no" to the question: "Was Pamela Justus injured by the negligence of the defendant, Michael J. Rosner, M.D.?" It is unknown upon which theory or theories of negligence the jury relied upon in answering "yes" to this question.
 

 Plaintiff's counsel argued to the jury that Pamela had endured pain and suffering for eleven years, but did not present any evidence of a dollar amount of her pain and suffering. The trial court instructed the jury to consider the evidence as to each of the following types of damages: medical expenses, pain and suffering, scars or disfigurement, partial loss of use of part of the body, and permanent injury until the time of death.
 

 Without objection, the trial court further instructed: "The total of all damages are to be awarded in one lump sum." Pursuant to the trial court's instruction, the jury returned a lump sum damages verdict, and appears to have considered, but awarded zero dollars for pain and suffering. Although the jury was not asked to differentiate its damages award, plaintiff testified the amount of Pamela's medical expenses was $512,162.03, three cents more than the amount of the jury's original verdict.
 

 The trial court substitutes its judgment for that of the jury's without knowing which theory or theories of negligence the jury's verdict relies upon. Included in the list of fifteen theories of negligence submitted to the jury are acts by Dr. Rosner which would not necessarily cause the jury to award any damages for pain and suffering, even where evidence was presented that Pamela experienced pain and suffering after the surgeries. The trial court abused its discretion by presuming the jury's finding of negligence was definitively linked to pain and suffering. Neither plaintiff nor the trial court shows any basis to set aside the jury's verdict.
 

 *80
 

 C. Failure to Mitigate
 

 The rule in North Carolina is that an injured plaintiff, whether his case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If he fails to do so, for any part of the loss incident to such failure, no recovery can be had.
 

 *158
 

 Radford v. Norris
 
 ,
 
 63 N.C.App. 501
 
 , 502-03,
 
 305 S.E.2d 64
 
 , 65 (1983) (citation and quotation marks omitted) (emphasis supplied). "This doctrine has generally been held to
 
 preclude recovery
 
 for those consequences of the tort-feasor's act which could have been avoided by acting as a reasonable prudent man in following medical advice."
 
 Id
 
 . (emphasis supplied).
 

 Without any objection, the trial court instructed the jury consistent with the law as follows:
 

 A person injured by the negligent conduct of another is nonetheless under a duty to use that degree of care which a reasonable person would use under the same or similar circumstances to avoid or minimize the harmful consequences of her injury. A person is not permitted to recover for injuries she could have avoided by using means which a reasonably prudent person would have used to cure her injury or alleviate her pain.
 

 However, a person is not prevented from recovering damages she could have avoided unless her failure to avoid those damages was unreasonable.
 

 If you find that a healthcare provider advised the plaintiff to follow up in her care and treatment, you would not necessarily conclude that Pamela Justus acted unreasonably in declining such advice. In determining whether Pamela Justus' conduct was reasonable, you must consider all of the circumstances as they appeared to Pamela Justus at the time she chose not to follow the healthcare provider's advice.
 

 These may include the financial condition of the plaintiff, the degree of risk involved, the amount of pain involved, the chances for success, the benefits to be obtained from the procedures and treatment, the availability of alternate procedures and treatment, or
 
 *81
 
 the knowledge [or] lack of knowledge of the plaintiff Pamela Justus.
 

 The jury was clearly instructed they were to determine and reach a verdict on whether Pamela had failed to use reasonable care to avoid or minimize the harmful consequences of her injury. The jury was further instructed on various factors to consider in deciding whether Pamela acted reasonably to seek medical treatment for her worsening symptoms and kyphosis. Whether Pamela unreasonably declined to seek appropriate medical treatment to mitigate her damages was the sole factual issue for the jury to determine under the court's mitigation instruction.
 

 Consistent with the court's instruction and again without objection, Issue # 12 was submitted to the jury, which required the jury to determine: "By what amount, if any, should the plaintiff's actual damages be reduced because of Pamela Justus's unreasonable failure, if any, to avoid or minimize her damages?"
 

 In support of its order setting aside the jury's verdict, the trial court also found and concluded: (1) Pamela had no duty to return to Dr. Rosner, as opposed to other healthcare providers; (2) the testimony of Dr. Rosner's four experts suggested Pamela had a duty to return specifically to Dr. Rosner, which was cumulative, inaccurate, and misleading; (3) Dr. Rosner therefore presented "no legally competent evidence" sufficient to support a finding that Pamela unreasonably failed to mitigate her damages; (4) no evidence was presented that Pamela unreasonably delayed trying to have her problems diagnosed and corrected; and, (5) the jury appears to have reduced its damage award based upon the cumulative impact of the misleading testimony of Defendant's experts.
 

 The plaintiff's failure to mitigate damages in a medical malpractice suit and the consequences of her actions, and lack thereof, is a proper area of expert medical testimony and is solely a fact determinative issue. Where conflicting evidence exists of whether the plaintiff undertook reasonable measures to mitigate her damages and follow medical advice or seek treatment, the plaintiff's actions in mitigation of damages is a jury question.
 
 See
 

 id
 
 . at 502-03,
 
 305 S.E.2d at 65
 
 .
 

 "It is the jury's function to weigh the evidence and to determine the credibility of witnesses."
 
 Anderson v. Hollifield
 
 ,
 
 345 N.C. 480
 
 , 483,
 
 480 S.E.2d 661
 
 , 664 (1997). "The jury's function as trier of fact must be given the utmost consideration and deference before a jury's decision is to be set aside."
 

 *159
 

 Di Frega v. Pugliese
 
 ,
 
 164 N.C.App. 499
 
 , 510,
 
 596 S.E.2d 456
 
 , 464 (2004) (citations and quotation marks omitted).
 

 *82
 
 Plaintiff presented evidence regarding her course of action and the medical treatment Pamela sought and received after her refusal to return to Dr. Rosner. The record clearly shows Pamela presented to numerous physicians for her continued head and neck pain, and neurological symptoms after her refusal to return to Dr. Rosner in May 2001. She was evaluated and treated by other physicians as early as July of 2001.
 

 Dr. Rosner also presented un-objected to and properly admitted expert testimony and other evidence that plaintiff's "chin to chest" deformity was the result of her failure to timely receive follow-up treatment from Dr. Rosner or another neurosurgeon.
 

 It is the function of the jury to weigh the admitted testimony and evidence, determine its credibility, and decide the extent, if any, Pamela failed to mitigate damages. It was solely the function of the jury to determine whether Pamela's post-surgery medical treatment and conduct was "reasonable" in light of the circumstances.
 
 See
 

 Anderson
 
 , 345 N.C. at 483, 480 S.E.2d at 664.
 

 Plaintiff's argument, and the trial court's order, on mitigation of damages is premised upon the claim that the jury believed Pamela had an affirmative duty to specifically return to Dr. Rosner. This un-substantiated premise and the set aside of the jury's verdict is reversible error.
 

 The expert witnesses
 
 did not state
 
 and the jury was
 
 not instructed
 
 that Pamela was required to return specifically to Dr. Rosner. Plaintiff and the trial court placed their own emphasis upon the questions and answers posed to Dr. Rosner's experts.
 

 The transcript shows the jury heard substantial amounts of evidence regarding Pamela's post-surgery course of action, which focused on the lapse of time in obtaining the proper treatment for the "chin to chest" deformity. For example, Dr. Seiff testified, "[s]o the fact that hers was chin on chest was because it went unaddressed for about three years before the time she presented to Dr. Coric."
 

 When viewed in light of all of the other evidence, the un-objected to testimonies of defendant's medical experts on areas within their expertise does not support the trial court's decision to set aside the jury's verdict.
 
 Di Frega
 
 ,
 
 164 N.C.App. at 510
 
 ,
 
 596 S.E.2d at 464
 
 . None of the expert witnesses testified Pamela's return specifically to Dr. Rosner was the only way of mitigating her damages, or that Pamela was under any duty to return specifically to Dr. Rosner.
 

 The jury heard all of the evidence presented from both sides regarding Pamela's post-surgery actions and medical treatment. The jury
 
 *83
 
 weighed the evidence, determined credibility of the witnesses, made an award, and reduced the verdict amount by all but one dollar for Pamela's failure to mitigate her damages.
 

 The evidence presented to the jury was more than sufficient to support the jury's finding that Pamela unreasonably failed to avoid, minimize or mitigate her damages. In light of all the testimony, Dr. Rosner's expert witnesses' testimonies were not so "misleading" to allow or compel the trial court to set aside the verdict on the mitigation of damages issue.
 

 The trial court's order, which aside the jury's verdict was based upon the court's notion that Dr. Rosner's expert witnesses had misled the jury by stating Pamela had a duty to return for follow up care specifically to Dr. Rosner, is error. The trial court's order on this issue is properly reversed. The jury's verdict and award of damages is based upon properly admitted expert testimonies, within the realm of their expertise, and other evidence, without any objections from plaintiff.
 

 II. Award of Costs for Non-Testifying Experts
 

 N.C. Gen. Stat. § 6-20
 
 (2015) allows for assessment of costs in a civil action "in the discretion of the court." Any costs awarded "are subject to the limitations on assessable or recoverable costs set forth in [N.C. Gen. Stat. §] 7A-305(d), unless specifically provided for otherwise in the General Statutes."
 
 Id
 
 .
 

 *160
 
 Prior to 2007, N.C. Gen. Stat. § 7A-305(d) set forth a list of expenses, which "when incurred, are also assessable or recoverable, as the case may be[.]" N.C. Gen. Stat. § 7A-305(d) (2005). In 2007, the General Assembly amended the statute to remedy a conflict between
 
 N.C. Gen. Stat. §§ 6-20
 
 and 7A-305(d).
 
 See
 

 2007 N.C. Sess. Laws 212
 
 .
 

 N.C. Gen. Stat. § 7A-305(d), as amended, states "the expenses set forth in this subsection
 
 are complete and exclusive and constitute a limit on the trial court's discretion
 
 to tax costs pursuant to G.S. 6-20." (emphasis supplied). The statute specifically lists and defines those items, which the trial court has the power to lawfully assess as costs.
 
 Id
 
 .
 

 This list was amended to include "[r]easonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings." N.C. Gen. Stat. § 7A-305(d)(11) (2015). Our Supreme Court has stated this statute does not require the party seeking the costs to show the expert witness testified subject to a subpoena.
 
 Lassiter v. N.C. Baptist Hosps., Inc.
 
 ,
 
 368 N.C. 367
 
 , 379,
 
 778 S.E.2d 68
 
 , 76 (2015).
 

 *84
 
 As the majority's opinion recognizes, the trial court's order of costs in the amount of $175,547.59 includes expenses listed in plaintiff's spreadsheet under the categories "Experts at Trial" ($85,757.75) and "All Court Reporting & Videography Bills for All Depositions" ($89,789.84). Both categories include expenses plaintiff incurred for the testimonies of Dr. Arthur Caplan, Dr. Brian Currie, and Dr. David Barton Smith.
 

 However, all of these three witnesses limited their trial testimonies and opinions solely to criticisms against the hospital defendants and not against Dr. Rosner.
 

 I disagree with the majority opinion's review of this issue of award of costs under an abuse of discretion standard. As our Supreme Court explained in
 
 Lassiter
 
 :
 

 As a result of the fact that an award of costs is an exercise of the statutory authority, if the statute is misinterpreted, the judgment is erroneous. In other words, when the validity of an award of costs hinges upon the extent to which the trial court properly interpreted the applicable statutory provisions, the issue before the appellate court is one of statutory construction, which is subject to de novo review.
 

 Id
 
 . at 375,
 
 778 S.E.2d at 73
 
 (brackets, quotation marks, and citations omitted).
 

 Here, the trial court misinterpreted N.C. Gen. Stat. § 7A-305(d)(11) and awarded costs for three of plaintiff's expert witnesses, who offered testimonies directed against actions by the hospital defendant, which was acquitted by the jury, and did not testify to Dr. Rosner's standard of care or alleged acts of negligence.
 
 See
 

 id
 
 . On
 
 de novo
 
 review, the award on costs should be reversed and this issue remanded for a new hearing.
 

 III. Conclusion
 

 The trial court properly granted plaintiff's motion for directed verdict on defendant's contributory negligence defense.
 

 The trial court abused its discretion under subsections (a)(6), (7) and (8) of Rule 59 by setting aside a valid jury's verdict on the issue of damages, where expert testimonies and other evidence was properly admitted, without objection, to permit the jury to conclude Pamela failed to mitigate her damages and enter its award.
 

 The trial court also acted without statutory authority to assess Dr. Rosner to pay costs for plaintiff's three expert witnesses' fees,
 
 *85
 
 whose testimonies did not pertain to Dr. Rosner's standard of care or alleged negligence.
 

 I vote to vacate the trial court's order on plaintiff's rule 59 motion, and remand to the trial court for reinstatement of the jury's verdict. I also vote to reverse the trial court's award on costs and remand for a new hearing, and for entry of an order, which does not include costs for any expert who did not specifically testify regarding Dr. Rosner's standard of care or alleged acts of negligence. I concur in part and respectfully dissent in part.
 

 [1]
 

 Fourteen issues were submitted to the jury addressing the liability of Michael J. Rosner, M.D.; Michael J. Rosner, M.D., P.A.; Fletcher Hospital, Inc. d/b/a Park Ridge Hospital; Adventist Health System; and Adventist health System Sunbelt Healthcare Corporation. All issues related to liability of the hospital and healthcare system and corporation for injury, wrongful death, fraud, or conspiracy as to Pamela Justus were answered in the negative. The jury also determined that Dr. Rosner was not liable for wrongful death as to Pamela Justus.
 

 [2]
 

 Hereinafter, the opinion will refer to Bruce Justus as "plaintiff."
 

 [3]
 

 On 2 December 2015, this Court granted a consent motion to dismiss Fletcher Hospital, Inc. d/b/a Park Ridge Hospital, Adventist Health System, and Adventist Health System Sunbelt Healthcare Corporation from the appeal of this case. The remaining defendants, Dr. Michael J. Rosner and Michael J. Rosner, M.D., P.A., are hereinafter referred to as "defendant."
 

 [4]
 

 At trial, a laminectomy was described as a "procedure [to] remove a portion of the vertebral bone to make more space in the spinal canal for the spinal cord."
 

 [5]
 

 To be clear, the trial court's order which substantially changed or altered the jury verdict by replacing it with the trial court's own verdict does constitute error.
 
 Cf.
 

 Baker v. Tucker
 
 ,
 
 239 N.C.App. 273
 
 , 278,
 
 768 S.E.2d 874
 
 , 877-78 (2015) ("[Rule 59(a) ] ) specifically provides that '[o]n a motion for a new trial in an action tried
 
 without a jury
 
 , the court may open the judgment if one has been entered ... and direct the entry of a new judgment.' " (quoting N.C.R. Civ. P. 59(a) );
 
 see also
 

 Handex of the Carolinas, Inc. v. Cnty. of Haywood
 
 ,
 
 168 N.C.App. 1
 
 , 22,
 
 607 S.E.2d 25
 
 , 38 (2005) (noting that, in the event of a clerical error on a jury verdict sheet, where the trial court sets aside or amends a verdict pursuant to Rule 59 after the jury has been discharged, there must be some evidence that all jurors are in agreement that the verdict sheet did not represent their intentions);
 
 see also infra
 
 Issue II.
 

 [6]
 

 Though enumerated in plaintiff's motion for a new trial or, alternatively, amending the judgment, the trial court made no findings of fact pertinent to subsection (a)(5) of Rule 59.
 

 [7]
 

 "Subject to the specific limitations set forth in G.S. 7A-305(d)(11), an expert witness, other than a salaried State, county, or municipal law-enforcement officer, shall receive such compensation and allowances as the court, or the Judicial Standards Commission, in its discretion, may authorize." N.C. Gen. Stat. § 7A-314(d) (2015).