Justice NEWBY dissenting.
Jury trials constitute the bedrock of our common law system. Since 1776 our state constitutions have safeguarded the right to a trial by jury. Thus, trial courts have always given great deference to juries' decisions. Only in limited, rare circumstances will courts invade the province of the jury. We afford particular deference to juries when cases have been fairly and fully litigated and a verdict is returned in the form of a general finding, not referencing any particular theory of liability or damages on which the jury made its determination. When the trial court takes the unusual step of overturning a jury's verdict, it must do so in a well-reasoned, legally sound manner. If the court proceeds under a misapprehension of law, the role of the appellate court is to correct the error and then return the matter to the trial court to proceed again, this time with the correct legal basis.
In this case, over the course of a two-month trial, the jury considered a complex medical malpractice case involving several parties. The jury heard multiple expert witnesses testify about numerous questions of liability and damages. In its instructions, based on the evidence, the trial court presented the jury with fifteen theories of negligence against defendant Rosner as well as an instruction to consider plaintiff's legal duty to mitigate her damages. Though the jury found defendant Rosner negligent, it did not specify upon which of those theories it relied. Despite the finding of negligence, the jury significantly reduced the damages awarded to plaintiff, concluding plaintiff failed to mitigate her damages. During this lengthy trial, plaintiff did not object to the mitigation evidence. Moreover, plaintiff furnished the language generally used for the trial court's jury instruction on mitigation. After the jury issued the verdict, plaintiff asked the trial court to modify the amount of damages. The trial court, laboring under a misapprehension of law, revised the damages awarded to plaintiff. Indisputably, this revision was error. Upon review the Court of Appeals should have accurately set forth the law and remanded the case to the trial court to make an informed post-trial determination; instead, the appellate court assumed the role of the trial court and crafted a different remedy for plaintiff: a new trial solely on damages. With little analysis, the majority now compounds this error by giving unwarranted deference to the Court of Appeals' decision **840 to grant a *779 new trial solely on damages despite the findings by the trial court which support a completely new trial. Because I believe these actions constitute an improper invasion of the roles of the jury and the trial court, I dissent.
On 12 June 2003, three years after her first surgery, plaintiff[1] filed a complaint against defendant Rosner, his medical practice, Michael J. Rosner, M.D., P.A.,[2] Fletcher Hospital, Inc. d/b/a Park Ridge Hospital, Adventist Health System, and Adventist Health System Sunbelt Healthcare Corporation. The complaint included claims for negligence, lack of informed consent, fraud, loss of consortium, and willful and wanton conduct. Plaintiff later amended the complaint to include claims for conspiracy and wrongful death. Plaintiff advanced fifteen theories of how defendant Rosner was negligent, which included performing unnecessary and medically unsound procedures, failing to obtain informed consent and adequately inform plaintiff of the nature of the surgical procedures, misleading plaintiff about her condition and the necessity of the procedures, and conspiring with the hospital to dishonestly market the surgical procedures at issue. Plaintiff contended that the hospital defendants were similarly negligent in failing to monitor these procedures or take actions to prevent them, that the hospital defendants knew or should have known Rosner was performing unnecessary surgeries, and that all defendants conspired, inter alia , to promote their reputations and enhance their profits from these procedures.
During the almost two-month trial in August and September 2014, defendant Rosner presented evidence that the surgeries were necessary and in line with the standard of care for neurosurgeons in the community, and that plaintiff knew and consented to the procedures despite the commonly known risks associated with them. Throughout trial defendant Rosner introduced evidence of plaintiff's failure to mitigate damages, including plaintiff's failure to seek appropriate follow-up treatment, failure to properly address her pre-existing and ongoing health issues, and her continued smoking before surgery and post surgery.[3]
**841 While various witnesses indicated that plaintiff's conditions worsened when she did not follow up with Rosner, defendant presented a plethora of evidence about plaintiff's general failure to pursue proper care in a timely manner.[4]
For example, on recross-examination, one of defendant's expert witnesses testified, "So the fact that [plaintiff's deformity] was chin on chest was because it went unaddressed for about three years before the time she presented to [Dr.] Coric. If she had been following up, as she should have, it would have been detected that she was developing a post-laminectomy kyphotic deformity and she would have had the appropriate surgery much sooner than when she presented with a chin-on-chest deformity." Another one of defendant's expert witnesses testified on cross-examination that he believed that plaintiff was not injured by the surgeries, which actually helped an ongoing condition, but that plaintiff "had a progressive descending spiral ... and didn't get any care" for her slowly declining condition. A third expert testified on direct examination that, had plaintiff received physical therapy and worn a neck brace, her condition "could have been avoided *780 probably." Over the course of this multi-week trial, plaintiff's counsel did not object to any of the failure to mitigate evidence as misleading, and the trial court did not intervene.
At the jury charge conference, defendant argued that sufficient evidence existed to show plaintiff was contributorily negligent. While plaintiff's counsel objected to any proposed instruction on contributory negligence, plaintiff's counsel gave extensive input on the mitigation instructions and jury verdict form. Several times, plaintiff's counsel requested to add language to the jury instruction referencing the reasonableness of plaintiff's failure to follow up specifically with Dr. Rosner. The trial court agreed to give a modified version of the mitigation instruction requested by plaintiff, instructing the jury on the nature of plaintiff's duty to mitigate damages.
After the charge conference, the trial court instructed the jury, inter alia , that it must determine whether defendant Rosner was negligent. In doing so, the trial court submitted fifteen theories on which the jury **842 could find defendant liable, instructing the jury that it could find defendant liable if it determined that defendant:
1: Performed unnecessary surgery on Pamela Justus;
2: Performed surgery on Pam Justus which was not medically indicated by imaging studies;
3: Performed surgery on Pam Justus which was not medically indicated by clinical signs and symptoms;
4: Performed surgery on Pam Justus without first obtaining adequate informed consent;
5: Misleading Pam Justus as to her condition regarding radiographic information;
6: Obtained Pam Justus's consent to surgery by misrepresenting that the surgery was necessary;
7: Fraudulently induced Pam Justus to undergo surgery that was not medically indicated;
8: Performed experimental surgery on Pam Justus;
9: Performed surgery on Pam Justus without adequate peer review and/or oversight;
10: Performed traditional surgery on Pam Justus for nontraditional reasons;
11: Performed surgeries on Pam Justus for conditions not treatable by surgery;
12: Failed to apply evidence-based medicine in treating Pam Justus;
13: By allowing the Hospital to dishonestly market his surgeries;
14: Conspired with the Hospital defendants to perform medically unnecessary surgeries on Pam Justus and others similarly situated at Park Ridge Hospital;
And 15: Failed to assure that Pam Justus was aware of the controversial nature of the diagnosis claimed by Dr. Rosner as a reason for such surgery.
Having received input from and consent of plaintiff's counsel, the trial court also instructed the jury that it should determine "[b]y what **843 amount, if any, should the plaintiffs' actual damages be reduced because of Pamela Justus's unreasonable failure to avoid or minimize her damages?" The trial court then gave the following mitigation instruction, which is a slightly modified version of the pattern jury instruction:
A person injured by the negligent conduct of another is nonetheless under a duty to use that degree of care which a reasonable person would use under the same or similar circumstances to seek treatment to get well and to avoid or minimize the harmful consequences of her injury. A person is not permitted to recover for injuries she could have avoided by using means which a reasonably prudent person would have used to cure her injury or alleviate her pain.
However, a person is not prevented from recovering damages she could have avoided unless her failure to avoid those damages was unreasonable.
If you find that a healthcare provider advised the plaintiff to follow up in her care and treatment, you would not necessarily conclude that Pamela Justus acted unreasonably in declining such advice. In determining whether Pamela Justus' conduct *781 was reasonable, you must consider all of the circumstances as they appeared to Pamela Justus at the time she chose not to follow the healthcare provider's advice.
These may include the financial condition of the plaintiff, the degree of risk involved, the amount of pain involved, the chances for success, the benefits to be obtained from the procedures and treatment, the availability of alternate procedures and treatment, or the knowledge or lack of knowledge of the plaintiff Pamela Justus.
On 25 September 2014, the jury returned its verdict finding defendant Rosner liable under some unspecified theory of negligence but not liable for all other claims against him. The jury also found no liability against any other defendants. Though the trial court instructed the jury on numerous theories of negligence and several factors of mitigation, the jury verdict sheet only included the following questions related to defendant Rosner:
1. Was Pamela Justus injured by the negligence of the defendant, Michael J. Rosner, M.D.? (Answer "YES" or "NO" in the space provided below.)
**844 ANSWER: Yes
....
3. Was the death of Pamela Justus caused by the negligence of the defendant, Michael J. Rosner, M.D.? (Answer "YES" or "NO" in the space provided below.)
ANSWER: No
....
5. Was the plaintiff damaged by the fraud of the defendants?: (A) Michael J. Rosner, MD; .... (Answer this issue "Yes" or "No" as to each of the ... defendants.)
A. Michael J. Rosner MD No
....
6. Did the defendants take advantage of a position of trust and confidence to bring about the surgeries of Pamela Justus? (Answer this issue "Yes" or "No" only as to any Defendant for which you answered "NO" in Issue No. 5 above.)
A. Michael J. Rosner MD No
....
If you answered Issue No. 6 "YES" as to any Defendant, then you must answer Issue No. 7 as to that Defendant(s).
7. Did the defendants act openly, fairly and honestly in bringing about the surgeries of Pamela Justus? (Answer this issue "Yes" or "No" as to each of the following defendants.)
A. Michael J. Rosner MD ________
....
8. Did Dr. Rosner conspire with Adventist Health System and/or Park Ridge Hospital to allow or enable Dr. Rosner to perform on members of the public, including Pamela Justus, surgeries which were unnecessary or not medically indicated with the intent and purpose of generating income for Dr. Rosner and Park Ridge Hospital? (Answer "YES" or "NO" in the space provided below.)
ANSWER: No
**845 While the jury also indicated on its verdict form that plaintiff suffered unspecified damages totaling $512,162.00, the jury reduced that award by $512,161.00 due to plaintiff's "unreasonable failure ... to avoid or minimize her damages." The trial court entered judgment accordingly, awarding plaintiff $1.00.
On 30 October 2014, plaintiff moved to alter or amend the verdict, citing Rule 59(a)(7). See N.C.G.S. § 1A-1, Rule 59(a)(7) (2017) ("Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law").[5] Specifically, in her motion plaintiff asserted that defendants' expert witness testimony led the jury to believe that plaintiff had a duty to return to Dr. Rosner to mitigate her damages, which plaintiff was not required to do by law. The motion argued:
8. The Plaintiff alleges and contends that the verdict of the jury as to [the mitigation issue] was and is contrary to the greater weight of credible testimony; that *782 the jury was misled by unreliable testimony into rendering an erroneous verdict....
....
10. That the verdict as to [the mitigation issue] is contrary to law.
11. That, as to [the mitigation issue], the burden is upon the Defendant(s). As a matter of fact and of law alike, the Defendants failed to carry that burden, for they presented legally insufficient evidence to support the jury's finding as to [mitigation]. Defendants' sole evidence that [plaintiff] supposedly failed to mitigate her damages is that she did not allow Dr. Rosner to perform corrective surgery. As a matter of law, however, she had no duty to seek medical attention specifically from Dr. Rosner rather than from other health care providers.
Thus, plaintiff requested that the court amend the verdict to award $512,161.00 in damages or, alternatively, order a new trial on damages. In addition, plaintiff moved for costs for, inter alia , expenses related to expert witness depositions and trial testimony.
**846 On 3 March 2015, the trial court entered an order granting plaintiff's motion to alter or amend the judgment by setting aside the jury's mitigation finding and entering judgment for $512,162.00. The trial court determined that "the overall impression created by [the expert] witnesses (and thus communicated to the jury) is that [plaintiff] had an obligation to return specifically to Dr. Rosner ; and that, by failing to do so, she allowed her condition to worsen." The trial court further found that "[t]here was no evidence presented that [plaintiff] unreasonably delayed trying to have her problems diagnosed and corrected." Thus, the trial court noted that, "[g]iven the uncontested evidence that Ms. Justus promptly and persistently made diligent efforts to obtain treatment from other physicians after she terminated her relationship with Dr. Rosner, no reasonable person could conclude that she failed to exercise reasonable care to mitigate her damages."
Based on these findings of fact, the trial court made the following conclusions of law:
3. The testimony by Dr. Rosner's neurosurgical experts suggesting that Mrs. Justus had a duty to return specifically to Dr. Rosner was inaccurate and misleading.
4. The misleading effect of the foregoing testimony was compounded by its repetition from four different expert witnesses.
5. Dr. Rosner presented no legally competent evidence sufficient to support a finding that [plaintiff] unreasonably failed to mitigate her damages.
6. This Court committed prejudicial error in submitting [mitigation] to the jury.
7. The jury's $1.00 damage award is manifestly inadequate.
8. The jury appears to have made its initial damage finding ($512,161.00) under the influence of passion or prejudice, for the finding entirely omits any sum for pain and suffering despite the uncontroverted evidence that [plaintiff] experienced severe pain and suffering.
9. The jury also appears to have reduced its damage finding ($512,161.00) under the influence of passion or prejudice; specifically, the cumulative impact of misleading testimony from multiple experts.
**847 10. Even aside from the lack of evidence to support any mitigation finding at all, the influence of passion or prejudice is further manifested in the grossly excessive amount of the jury's mitigation finding.
Believing it had the authority to modify the judgment as requested by plaintiff, the trial court revised the amount of damages from $1.00 to $512,162.00. The trial court did not award a new trial for damages or make any alternative holding. Finally, the trial court granted plaintiff's motion for costs, awarding plaintiff $175,547.59, the amount that plaintiff requested for depositions and all experts' trial testimony.
In reviewing the trial court's determination, the Court of Appeals unanimously concluded that the trial court erred by modifying the judgment. Justus v. Rosner , --- N.C. App. ----, ---- n.5, ----, 802 S.E.2d 142, 149 n.5, 152-53 (2017). Nonetheless, the majority crafted a new remedy in awarding a new trial solely on damages. Id. at ----, 802 S.E.2d at 152-53. The Court of Appeals believed that, though the trial court had proceeded under a misapprehension of law, *783 based on the trial court's findings of fact and conclusions of law, this new remedy was appropriate. Id. at ----, 802 S.E.2d at 152-53. In its analysis the majority added to plaintiff's rationale as presented to the trial court under Rule 59(a)(7) and considered additional grounds under Rule 59(a)(6). Id. at ----, 802 S.E.2d at 152. The Court of Appeals majority recognized that the trial court had improperly relied on Rule 59(a)(8), allowing the court to order a new trial for an "[e]rror in law occurring at the trial," because plaintiff did not, as required by that provision, object to the evidence at any point during trial. Id. at ----, 802 S.E.2d at 152. Ultimately, the Court of Appeals vacated the trial court's modified damages award and granted a new trial on damages only. Id. at ----, 802 S.E.2d at 144.
Though the dissenting judge agreed that the trial court erred by rewriting the damages award, he argued that plaintiff was not entitled to relief on any Rule 59 grounds. Id. at ----, 802 S.E.2d at 156 (Tyson, J., concurring in part and dissenting in part). The dissent noted that, in granting plaintiff relief, the trial court "substitute[d] its judgment for that of the jury's without knowing which theory or theories of negligence the jury's verdict relies upon." Id. at ----, 802 S.E.2d at 157. Moreover, the dissent noted that plaintiff's failure to "seek appropriate medical treatment to mitigate her damages" is a "proper area of expert medical testimony" that is solely a factual issue appropriate for the jury to decide. Id. at ----, 802 S.E.2d at 158. The dissent also asserted that plaintiff and the trial court put "their own emphasis upon the questions and answers posed to Dr. Rosner's experts" when, in fact, "[t]he expert witnesses did **848 not state and the jury was not instructed that [plaintiff] was required to return specifically to Dr. Rosner." Id. at ----, 802 S.E.2d at 159. Viewed in light of all the evidence, the dissent opined that the "un-objected to testimonies of defendant's medical experts on areas within their expertise does not support the trial court's decision to set aside the jury verdict." Id. at ----, 802 S.E.2d at 159. Therefore, the dissent would vacate the trial court's order and remand for that court to reinstate the jury's verdict. Id. at ----, 802 S.E.2d at 160.
Defendant Rosner appealed the decision of the Court of Appeals based on the dissenting opinion. This Court also granted defendant Rosner's petition for discretionary review on the issue of whether, if a new trial is necessary, the new trial should encompass both damages and liability.[6]
The majority agrees that the trial court erred in some of its rationale and in its granting a revised damages award. The majority nonetheless, with little analysis, upholds the appellate court-created remedy of a new trial as to damages only by mistakenly applying a deferential standard of review. As the cases hold, trial court decisions receive a deferential standard of review, not those of the Court of Appeals. Thus, with only conclusory statements, the majority allows the remedy of a new trial solely as to damages. In reaching its conclusion, the majority contravenes precedent by wrongly invading the jury room and somehow pinpointing the single theory of negligence the jury chose. After selecting one of the fifteen possible theories of negligence, the majority then determines the damages are "insufficient" under that particular theory but nonetheless concludes the verdict did not represent a compromise.
Because the trial court labored under a misapprehension of the law in its assessment of plaintiff's motion and its remedy, this Court should return the matter to the trial court for a proper review of plaintiff's motion. The trial court should limit itself to the legal grounds raised by plaintiff's motion and fairly assess the un-objected to evidence presented at trial. The trial court should not guess which theory of negligence the jury found, but should inquire whether any theory of negligence supports the jury's assessment of damages. Likewise, the trial court should *784 **849 not reweigh the mitigation evidence, but looking carefully at all of it, consider whether any evidence supports the jury's mitigation decision.
I.
While "[i]t is impossible to place precise boundaries on the trial court's exercise of its discretion to grant a new trial," a trial court's decision to interfere with a jury verdict should be made with "great care and exceeding reluctance." In re Will of Buck , 350 N.C. 621, 626, 516 S.E.2d 858, 861 (1999) (emphasis omitted); see also Bird v. Bradburn , 131 N.C. 488, 489, 42 S.E. 936, 937 (1902) (noting that a trial judge "will be reluctant to set his opinion against that of the twelve [jurors]" (parentheses omitted) ). "This is so because the exercise of this discretion sets aside a jury verdict and, therefore, will always have some tendency to diminish the fundamental right to trial by jury in civil cases which is guaranteed by our Constitution." In re Buck , 350 N.C. at 626, 516 S.E.2d at 861 ; see also Worthington v. Bynum , 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982) ("[T]rial judges of this state have traditionally exercised their discretionary power to grant a new trial in civil cases quite sparingly in proper deference to the finality and sanctity of the jury's findings."); State v. Little , 174 N.C. 800, 802, 94 S.E. 1, 2 (1917) ("It is the province of the jury to weigh the testimony and to sift the true from the false." (citations omitted) ).
Rule 59 of the North Carolina Rules of Civil Procedure codifies the authority of a trial court to set aside a jury verdict by granting a new trial or altering or amending a jury verdict in limited circumstances. See N.C.G.S. § 1A-1, Rule 59 (2017); Bird , 131 N.C. at 489, 42 S.E. at 936 (recognizing the trial court's inherent power to set aside a jury verdict as a matter of discretion). Under Rule 59, the parties in a case may move for a new trial or an altered or amended judgment, or alternatively, the trial court may order a new trial on its own initiative so long as it does so "[n]ot later than 10 days after entry of judgment." N.C.G.S. § 1A-1, Rule 59(d). Specifically, Rule 59(a)(7) allows the trial court to grant a new trial "on all or part of the issues" when there is "[i]nsufficien[t] ... evidence to justify the verdict or ... the verdict is contrary to law." Id. , Rule 59(a)(7). A trial court should grant a motion under Rule 59(a)(7) in only "those exceptional situations where the verdict is contrary to the evidence presented and [where the verdict] will result in a miscarriage of justice." In re Buck , 350 N.C. at 628, 516 S.E.2d at 862.
When a trial court properly addresses a Rule 59 motion, a trial court's action is reviewed only for an abuse of discretion. See id. at 625, 516 S.E.2d at 860-61 ("Like any other ruling left to the discretion of a trial **850 court, the trial court's appraisal of the evidence and its ruling on whether a new trial is warranted due to the insufficiency of evidence is not to be reviewed on appeal as presenting a question of law."); Worthington, 305 N.C. at 487, 290 S.E.2d at 605 ("[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice."). We afford this deference because the trial court, unlike an appellate court, "active[ly] participat[es] in the trial," is "acquaint[ed] with the evidence presented," and observes all parties involved. Worthington , 305 N.C. at 487, 290 S.E.2d at 605.
A trial court abuses its discretion when it misapprehends the applicable law. See, e.g. , In re Estate of Skinner , 370 N.C. 126, 139-40, 804 S.E.2d 449, 457-58 (2017). For instance, while Rule 59 affords the trial court the ability to alter or amend the verdict, the trial court may not increase the monetary judgment for a reason other than to award interest. See Bethea v. Town of Kenly , 261 N.C. 730, 732, 136 S.E.2d 38, 40 (1964) (per curiam) ("It is a cardinal rule that the judgment must follow the verdict, and if the jury have given a specified sum as damages, the court cannot increase or diminish the amount, except to add interest, where it is allowed by law and has not been included in the findings of the jury." (first quoting 2 McIntosh, North Carolina Practice and Procedure § 1691 (2d ed. 1956); and then citing City of Durham v. Davis , 171 N.C. 305, 88 S.E. 433 (1916) ) ).
When the trial court commits such an error of law, an appellate court should not *785 usurp the role of the trial court; rather, the appropriate remedy is to vacate the order or judgment on that issue, state the law, and remand to the appropriate lower court to apply the correct legal standard. See, e.g. , Wilson v. McLeod Oil Co. , 327 N.C. 491, 523, 398 S.E.2d 586, 603 (1990) ("Since the judge's order was signed under a misapprehension of the law, we believe the better approach is to vacate the order and remand for reconsideration of plaintiffs' motion ... in light of our opinion in this case...."); Nationwide Mut. Ins. Co. v. Chantos , 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979) (reasoning that, when a trial judge misunderstood his authority under Rule 59, the proper remedy would be to remand the case to the trial court to make the appropriate determination); Hanford v. McSwain , 230 N.C. 229, 233, 53 S.E.2d 84, 87 (1949) ; see also In re Skinner , 370 N.C. at 146, 804 S.E.2d at 462 (Morgan, J., dissenting) (citations omitted).
It is clear that the trial court misapprehended the law by rewriting the damages award for reasons other than awarding interest. Acting under this misapprehension of law, the trial court made various findings of fact **851 unsupported by the evidence, considered various Rule 59 grounds not argued by plaintiff to support its decision, and crafted a legally invalid remedy. For example, the trial court relied on its findings that "passion or prejudice" permeated the jury's initial damage award and subsequent decision to reduce damages. Passion and prejudice, however, are not an appropriate consideration under plaintiff's Rule 59(a)(7) motion.[7] Rule 59 confines a trial court's consideration to the Rule 59 grounds asserted by a plaintiff.[8] Moreover, the trial court deemed evidence of plaintiff's attempt to receive follow-up treatment as "uncontroverted" to support its conclusion that there was a "lack of evidence to support any mitigation finding at all." Throughout the almost two-month trial, however, the parties debated and discussed in depth whether plaintiff took appropriate mitigation actions after the surgery. During the trial and charge conference the mitigation issue was central and clearly not "uncontroverted." Thus, the proper remedy when the trial court proceeded under a misapprehension of law is for the appellate court to state the applicable law and remand the case to the trial court to determine the motion under the proper legal standard.[9]
II.
Nonetheless, if a new trial is warranted, the majority also errs by upholding with little analysis the remedy of a new trial solely on damages instead of on all issues. "It is settled beyond controversy that it is entirely discretionary with the [Trial] Court ... whether it will grant a partial new trial." Table Rock Lumber Co. v. Branch , 158 N.C. 251, 253, 73 S.E. 164, 165 (1911). A trial court will typically grant a partial new trial "when the error, or reason for the new trial, is confined to one issue, which is entirely separable from the others and it is perfectly clear that there is no danger of complication." Id. at 253, 73 S.E. at 165. Importantly, however, "[w]here it appears that the verdict was the result of a compromise, such error taints the entire verdict and requires a new **852 trial as to all of the issues in the case." Robertson v. Stanley , 285 N.C. 561, 569, 206 S.E.2d 190, 195 (1974) (quoting 58 Am. Jur. 2d New Trial § 27, at 213 (1971) [hereinafter New Trial ] ).
"Courts are reluctant to grant a new trial as to damages alone unless it is clear that the error in assessing damages did not affect the entire verdict." Id. at 568, 206 S.E.2d at 195.
*786 Moreover, "[a] new trial as to damages alone should not be granted where there is ground for a strong suspicion that the jury awarded inadequate damages to the plaintiff as a result of a compromise involving the question of liability." Id. at 569, 206 S.E.2d at 196 (alteration in original) (quoting M.C. Dransfield, Annotation, Propriety of Limiting to Issue of Damages Alone New Trial Granted on Ground of Inadequacy of Damages Awarded , 29 A.L.R.2d 1199, § 10 (1953) ).
This Court has previously recognized that a "grossly inadequate" award of damages may indicate "that the jury was actuated by bias or prejudice, or that the verdict was a compromise." Id. at 569, 206 S.E.2d at 195-96 (quoting New Trial § 27, at 213). "[W]here, in an action for personal injuries the severity of the injury was beyond contention, a verdict for a grossly inadequate sum was in itself almost a conclusive demonstration that it was the result, not of justifiable concession of views, but of improper compromise of the vital principles which should have controlled the decision." Bartholomew & Co. v. Parrish , 186 N.C. 81, 84, 118 S.E. 899, 900 (1923). In such a case "the court must set aside the verdict in its entirety and award a new trial on all issues." Robertson , 285 N.C. at 569, 206 S.E.2d at 196 (quoting New Trial § 27 ).
Here the jury was instructed on fifteen different theories of liability and multiple factors of mitigation. Though the jury found defendant negligent and initially awarded plaintiff damages totaling $512,161.00 (being comparable to the amount plaintiff submitted as her medical bills), the jury reduced plaintiff's damages to $1.00 due to her failure to mitigate. Such an award, depending on the theory of negligence, appears to be the exact type of "inadequate sum" of damages this Court has previously determined can indicate a compromise verdict. In addition, the jury found no liability against any other defendant, rejected plaintiff's claim that the surgeries were performed as part of a conspiracy between these parties, and found defendant Rosner not responsible for plaintiff's death. Given that plaintiff advanced fifteen different theories of negligence, including that defendant Rosner failed to properly inform plaintiff of the procedures and their risks and performed unnecessary surgeries, the jury's finding of negligence in conjunction with its $1.00 damage award may indicate various compromises.
**853 Improper jury motive leading to an inadequate verdict appears to be the precise issue with which the trial court was concerned, evinced by its findings on three separate occasions that passion or prejudice permeated the jury award. Likewise, the majority opinion agrees the damage award was insufficient. It appears the trial court and majority acknowledge the presence of the precise factors indicating a compromise verdict, warranting a completely new trial.
Further, given this outcome, the jury may not have actually believed the theory on which it found defendant liable or concluded that its finding of negligence was more theoretical than practical, thereby leading jurors to issue a nominal damage award as the result of a compromise. Similarly, the compromise was perhaps to find negligence but award only $1.00 in damages. As such, the jury's verdict is tainted so that a new trial on damages only would not be proper. Such a finding supports a new trial on all issues; it is impossible to say the finding of liability is untainted, but the damages amount is not. See Robertson , 285 N.C. at 569, 206 S.E.2d at 196.
Nonetheless, the Court of Appeals creates a remedy of a new trial as to damages only. Then, at this Court, without analysis the majority grants the deference reserved for the trial court to the Court of Appeals' determination to create a new remedy. While the majority at this Court recognizes that a trial court's ability to set aside a judgment is reviewed for abuse of discretion, the majority now applies the same review to the Court of Appeals' decision to create its own remedy. The trial court, not the Court of Appeals, would be the proper court to determine whether plaintiff should receive a new trial and if so, on what issues. Nonetheless, this Court prefers to speculate as to what a fully informed trial court would do instead of simply allowing it to act.
The majority's decision further exacerbates the errors of the trial court and Court of Appeals by clearly invading the jury *787 room, sifting through plaintiff's fifteen theories of negligence and award of damages, and speculating as to the jury's actual reasoning and conclusions. From the cold record, the majority makes these declarations: of the fifteen possible grounds for negligence, the jury found defendant liable on one particular ground, characterized by the majority as "perform[ing] unnecessary surgeries"; the majority's selected theory of negligence required damages for pain and suffering; the amount of damages awarded by the jury does not include any amount for pain and suffering; and the jury based its mitigation decision solely on plaintiff's failure to return specifically to Rosner. To reach these conclusions, the majority isolates several lines of testimony that occurred over an almost two-month trial. **854 Because the record does not indicate the theory on which the jury made its decision, our jurisprudence is clear that this Court should not substitute itself for the jury and "presume to know" the theory upon which the jury relied. McGill v. French , 333 N.C. 209, 215-16, 424 S.E.2d 108, 111-12 (1993) (restating the well-established "principle that a reviewing court cannot appropriately determine, absent clear showing of record, upon what basis a jury renders its verdict" (citations omitted) ); id. at 216, 424 S.E.2d at 112 ("We therefore hold that the Court of Appeals erred in assuming that the particular act of negligence upon which the jury based its verdict was defendant's alleged failure to inform the plaintiff of his cancer.")
Therefore, a new trial on all issues is particularly appropriate in this case because a new jury will not know the theory of negligence on which the jury relied and which corresponding damages may be appropriate.
III.
When a trial court proceeds under a misapprehension of law, an appellate court should state the law and remand the case to the trial court for proper consideration. It is unclear whether, had the trial court correctly known the law, it would have awarded a new trial, and if so, whether it would limit a new trial solely to damages. Even given the majority's approach that a new trial is warranted, plaintiff should receive "a new trial [on] all of the issues." Robertson , 285 N.C. at 569, 206 S.E.2d at 195 (quoting New Trial § 27, at 213). As such, any review of costs would be premature at this time.
The Court of Appeals erred in crafting its own remedy, a new trial on damages only, and this Court errs by applying a deferential standard to that remedy. If a new trial were justified, the trial should be on all issues. Accordingly, I respectfully dissent.

Rule 59 provides that a new trial may be granted on several grounds, including the "[i]nsufficiency of the evidence to justify the verdict or [when] the verdict is contrary to law." N.C. R. Civ. P. 59(a)(7).

Although this Court has previously stated that "[i]t is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant a partial new trial," Robertson v. Stanley , 285 N.C. 561, 568, 206 S.E.2d 190, 195 (1974) (quoting Table Rock Lumber Co. v. Branch , 158 N.C. 251, 253, 73 S.E. 164, 165 (1911) ), I am skeptical of the application of Rule 59 discretionary authority here. No one can seriously dispute that the trial court is in the best institutional position to exercise the type of discretionary authority envisioned by Rule 59(a). Moreover, I do not see how the majority can possibly ensure, in its order for a partial new trial on damages only based on this cold record, that "no possible injustice can be done to either party." Id. Finally, even a casual observer would quickly discern that Robertson relies on Table Rock , a case that precedes both the state and federal rules of civil procedure.

The allegations that plaintiff failed to mitigate her damages primarily related to plaintiff's injury arising from her inability to support her head, i.e., kyphosis or chin-on-chest deformity that developed post surgery, and involved whether plaintiff delayed seeking appropriate and timely preventative treatment after her procedures.

The majority opinion states that plaintiff "saw numerous doctors for diagnosis and treatment of her neck condition" following her surgeries. Most of these appointments with pain doctors, however, only addressed plaintiff's symptoms. The record reflects plaintiff's being seen at Wake Forest Baptist and Duke University Hospitals during the critical period after she left Rosner's care, but plaintiff did not properly follow up with either.

Though plaintiff also cited Rule 59(a)(5) in her initial motion, plaintiff's counsel expressly stated that he was abandoning this argument at the trial court hearing. See N.C.G.S. § 1A-1, Rule 59(a)(5) (2017) ("Manifest disregard by the jury of the instructions of the court").

This Court likewise granted defendant Rosner's petition for discretionary review regarding the issue of contributory negligence. Defendant Rosner argued that the trial court should have instructed the jury on contributory negligence because, in his view, much of what plaintiff conceded was mitigation evidence actually supported a defense of contributory negligence. This Court decides that it improvidently allowed discretionary review of the contributory negligence issue.

Passion and prejudice are a proper consideration under Rule 59(a)(6) and in crafting the remedy of the scope of a new trial. See discussion infra II.

If upon review the trial court determined of its own accord that different grounds warranted setting aside the verdict under Rule 59, it must have acted within ten days after its entry of judgment, which it did not do. Otherwise, the trial court is limited to the grounds specified by the moving party. See N.C.G.S. § 1A-1, Rule 59(d).

Because the trial court's findings of fact and conclusions of law appear to be tainted by its misapprehension of law, the case should be remanded to the trial court. Nonetheless, for the reasons stated herein and in the dissenting opinion at the Court of Appeals, I think many of the trial court's findings of fact are unsupported and its conclusions of law are in error.